# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

MARILYN KAYE PAYNE,      )
                                       )
           Plaintiff,      )
                                       )      **Civil Action No. 2:10-00113**
v.                   )      **Judge Wiseman / Knowles**
                                       )
MICHAEL J. ASTRUE,      )
**Commissioner of Social Security**      )
                                       )
           Defendant.      )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on February 6, 2008,[1] alleging that she had been disabled since July 1, 2005,[2] due to chronic obstructive pulmonary disease ("COPD"), degenerative bone disease, arthritis, a history of rectal cancer, and bowel incontinence. Docket No. 11, Attachment ("TR"), TR 10, 69, 94-100, 101-03, 124. Plaintiff's applications were denied both initially (TR 52, 53) and upon reconsideration (TR 54, 55). Plaintiff subsequently requested (TR 70) and received (TR 24-44) a hearing. Plaintiff's hearing was conducted on December 2, 2009, by Administrative Law Judge ("ALJ") Joan A. Lawrence. TR 24. Plaintiff and vocational expert ("VE"), Edward Smith, appeared and testified. TR 24-25.

On January 20, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-18. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial activity since September 1, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative bone disease, bowel disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[1]On January 23, 2008, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. TR 10, 119.

[2]Plaintiff amended her alleged onset date to September 1, 2007. TR 10, 176.

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is precluded from work that exposes her to dust, fumes, smoke, chemicals, and/or noxious gases; and that the claimant has some degree of difficulty with fine manipulation due to the loss of the upper index finger on her right hand.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 30, 1957, and was 50 years old , which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 12-17.

On February 1, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 6. On November 8, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which

5

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

_____

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) improperly evaluating Plaintiff's subjective complaints of pain; (2) rejecting the findings and opinion of Plaintiff's treating nurse practitioner; (3) concluding that Plaintiff is able to adjust to other work available in the local economy; and (4) failing to adequately address Plaintiff's bowel disorder.  Docket No. 14. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Subjective Complaints of Pain**

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not appropriately address her complaints of pain. Docket No. 14.

Defendant responds that the ALJ appropriately evaluated Plaintiff's subjective complaints of pain and made a "reasoned and well-supported conclusion that Plaintiff's statements were not credible" based upon consideration of the factors provided by the Regulations. Docket No. 15.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other."].

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

     When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

524, 538 (6th Cir. 1981).

     Before addressing the issue of Plaintiff's credibility, the ALJ summarized Plaintiff's

testimony concerning her impairments. TR 14-15. Plaintiff testified that she worked for only

four days at her last job at a sewing factory in January 2007 because of her back and bowel problems. TR. 14, 28. The ALJ noted that Plaintiff's last "significant period" of work experience was at Systex manufacturing and occurred over a period of about three years concluding in February 2006 when Plaintiff was allegedly terminated because of illness. TR 14, 28-29. Plaintiff reported that she could not then-currently work because of her bowel disorder, back pain, frequent headaches, and difficulty sitting or standing for very long. TR 14, 29. Plaintiff reported having trouble with her bowels for approximately ten years which had become increasingly worse. TR 14, 30. Plaintiff stated that she had frequent accidents, including while she was working. TR 14, 34. Plaintiff also reported that she had to wear undergarments for her bowel problems and that she averaged about six bowel movements per day. TR 14, 34-35. Plaintiff reported that a cervical fusion in 1991 resulted in a loss in range of motion in her neck and caused her major headaches three or four times weekly which she coped with by taking ibuprofen and retreating to a quiet and dark place. TR 14-15, 32-33. Plaintiff reported that she rated her pain while on medication as a four to six on a scale of one to ten for an average day, and Plaintiff reported no adverse side effects from the medication. TR 15, 30, 36. The ALJ noted that Plaintiff had lost a portion of her right index finger in a lawnmower accident. TR 15, 35-36. Additionally, the ALJ noted that Plaintiff was able to do her own cooking and household chores. TR 15, 30.

Ultimately, the ALJ found that Plaintiff had testified to performing daily activities "that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." TR 15. Specifically, the ALJ noted that Plaintiff had a driver's license, lived alone, cared for her pets, prepared her own meals, and performed household chores (with rest breaks).

TR 15, 27-28, 30, 37.

Regarding Plaintiff's back pain, the ALJ stated that the treatment provided was "essentially routine and/or conservative in nature." TR 15, 236, 253-54, 257-58, 259-60, 331-32, 373, 390. The ALJ also noted that the record "did not reveal any physical therapy sessions or steroid injections," and that the medical evidence showed only "mild degenerative changes in her cervical spine and no abnormalities in her lumbar spine." TR 15, 230, 279, 284. The ALJ further noted that the "nerve conduction studies showed no abnormalities in the claimant's extremities." TR 15, 229. The ALJ reasoned that, because Plaintiff testified that she did not have side effects from her medications, adverse side effects would not interfere with her ability to perform work activities "in any significant manner." TR 15, 30. Additionally, the ALJ noted that, "[T]he claimant's work history shows that the claimant worked only sporadically prior to the alleged onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." TR 15, 135.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 14-15. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler,* 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary,* 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky,* 35 F.3d at 1036), and the reasons must be supported by the record (*see King,* 742 F.2d at 975).

After assessing the testimony and objective medical evidence, the ALJ stated that:

> the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

TR 14. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her video hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2.  Weight Accorded to the Opinion of Plaintiff's Treating Nurse Practitioner

Plaintiff contends that the ALJ "improperly dismissed the opinion of [Nurse] Reed and did not properly evaluate her findings and opinions."  Docket No. 14.  Plaintiff asserts that the ALJ erred in declaring that Nurse Reed was not an acceptable medical source, because nurse practitioners are considered acceptable medical sources under 20 C.F.R. § 404.1513(a).  *Id.*

Defendant responds that Plaintiff has misread the ALJ's decision, because the ALJ did not find that Nurse Reed was an unacceptable medical source, but rather, said instead that Nurse Reed was not qualified to render a "medical opinion" as defined by the Regulations, and that, accordingly, Nurse Reed's assessment of Plaintiff's limitations was not a "medical opinion" within the meaning of the Regulations.  Docket No. 15.  Defendant maintains that the ALJ rejected Nurse Reed's assessment because it was incredible and inconsistent with other evidence of record.  *Id.*  Defendant contends that the ALJ properly articulated her reasons for rejecting Nurse Reed's assessment.  *Id.*

During 2008 and 2009, Plaintiff was treated several times by Wendy Reed, FNP, at the Fentress County Health Department.  TR 331, 380-81, 384, 388-89.  On October 9, 2009, Reed completed a medical source statement regarding Plaintiff's physical condition.  TR 15, 473-76.  Nurse Reed opined that Plaintiff could carry less than ten pounds occasionally or frequently, and that Plaintiff could stand or walk less than two hours in an eight-hour workday as a result of her back and muscle pain.  TR 15, 473.  Nurse Reed also opined that Plaintiff could sit less than six hours in an eight-hour workday, and that Plaintiff's pushing and pulling were limited in her upper and lower extremities.  TR 474.  Nurse Reed's rationale for Plaintiff's exertional limitations was Plaintiff's need to frequently change positions as a result of her degenerative disc

disease and general weakness from her pain.  *Id.*  Nurse Reed opined that Plaintiff could never

kneel, crouch, crawl, or stoop.  *Id.*  Nurse Reed also opined that Plaintiff should avoid exposure

to temperature extremes, noise, dust, vibration, humidity or wetness, hazards, fumes, odors,

chemicals, and gases.  TR 476.  Nurse Reed further opined that exposure to these environmental

limitations would lead to increased breathing problems, exacerbate Plaintiff's COPD, and

aggravate Plaintiff's degenerative disc disease causing increased pain.  *Id.*

     With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion
> we receive.  Unless we give a treating source's opinion controlling
> weight under paragraph (d)(2) of this section, we consider all of
> the following factors in deciding the weight we give to any
> medical opinion.
>     (1)  Examining relationship.  Generally, we give more
> weight to the opinion of a source who has examined you than to
> the opinion of a source who has not examined you.
>     (2) Treatment relationship.  Generally, we give more
> weight to opinions from your treating sources, since these sources
> are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations.  If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically acceptable clinical
> and laboratory diagnostic techniques *and is not inconsistent with
> the other substantial evidence in your case record*, we will give it
> controlling weight.  When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in
> paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the
> factors in paragraphs (d)(3) through (d)(6) of this section in
> determining the weight to give the opinion. ...
>     (3) Supportability.  The more a medical source presents
> relevant evidence to support an opinion, particularly medical signs
> and laboratory findings, the more weight we will give that opinion.

The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502. Although a nurse practitioner is not among the acceptable medical sources enumerated in 20 C.F.R. § 404.1513(a), the Regulations provide that the ALJ may properly

"use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -

(1) Medical Sources not listed in paragraph (a) of this section (for example, *nurse-practitioners*, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)."

20 C.F.R. § 404.1513(d) (emphasis added).

The ALJ, in determining Plaintiff's residual functional capacity, specifically addressed Nurse Reed's medical source statement. TR 15. The ALJ noted that Nurse Reed's evaluation of

Plaintiff's exertional limitations was "inconsistent with the objective medical findings and treating progress notes of record." *Id.* In contrast to the rationale provided by Nurse Reed, the ALJ stated:

> The claimant's diagnostic testing showed only mild degenerative changes in her cervical spine and no abnormalities in her lumbar spine. The nerve conduction study showed no abnormalities.

TR 15, 229, 230, 279, 284.

The ALJ found Nurse Reed's assessment to be "overly-restrictive and inconsistent with the preponderance of the other substantial evidence of record." TR 15. The ALJ also stated that Nurse Reed's "conclusions are sympathetic to the claimant's subjective complaints," and that her opinion was "conclusory, as she provided no indication of any objective evidence she relied upon in forming her opinions." *Id.* As discussed above, the ALJ's finding that Plaintiff's subjective complaints were not fully credible was proper. TR 14. As the ALJ articulated, she declined to accord any weight to Nurse Reed's opinion because she determined it to be inconsistent with, and unsupported by, other medical evidence.

Nurse Reed treated Plaintiff over a period of time, a fact that would justify the ALJ's giving greater weight to her opinion than to other opinions. As has been noted, however, Nurse Reed's opinion is unsupported by other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* The Regulations do not mandate that the ALJ accord Nurse Reed's evaluation

controlling weight.  Accordingly, Plaintiff's argument fails.

### 3.  Ability to Adjust to Other Work

Plaintiff argues that she is unable to perform substantial gainful activity because the vocational expert "testified that she did not have any transferable job skills to the sedentary level and could not return to any past relevant work."  Docket No. 14.  Plaintiff argues, therefore, that she "meet[s] GRID(s) 201.09 and/or 201.10."  *Id.*  Plaintiff also contends that the vocational expert testified that the Plaintiff "was unable to work based upon the restrictions assigned by [Ms.] Reed, FNP."  *Id.*

Defendant responds that the testimony of the vocational expert highlighted by Plaintiff was in response to one of several hypothetical questions presented to the vocational expert by the ALJ, and, thus, that the highlighted testimony is "irrelevant" because the ALJ properly chose to adopt the restrictions given in a different hypothetical.  Docket No. 15.  Defendant contends that, because the ALJ "properly determined that Plaintiff had the capacity to perform medium work," "Grids 201.09 and 201.10 are not appropriate standards for determining disability in this case" since "the 201.00 series Grid applies only to a sedentary level of work."  *Id.*

As noted above, "By showing a medical condition that prevents [a claimant] from returning to such past relevant work, the claimant establishes a *prima facie* case of disability." 20 C.F.R. §§ 404.1520, 416.920.  Once the claimant has established a *prima facie* case of disability, "the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity."  *Id.* This can be accomplished by soliciting testimony from a vocational expert in response to an

ALJ's presentation of varying hypothetical questions. "Where substantial evidence supports an ALJ's finding that a claimant has the residual functional capacity to perform a significant number of jobs identified by a vocational expert, it is irrelevant that the vocational expert also testified that the claimant could not perform other jobs based upon a hypothetical question assuming a more severely restricted RFC." *Maziarz v. Secretary of H.H.S.*, 837 F.2d 240, 246-47 (1987).

The ALJ's sixth finding - that Plaintiff "is unable to perform any past relevant work" - establishes a *prima facie* case of disability. TR 16. The ALJ then determined, however, that, "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." TR 17.

At the hearing, the ALJ presented the vocational expert with three hypothetical claimants, each with differing specified exertional level and limitations, and requested that the vocational expert identify which jobs, if any, were available in the national and local economies that could be performed by such an individual. TR 40-43. The first hypothetical, consistent with the ALJ's ultimate finding, provided: "the individual with the same work history, and educational background as the claimant ... is restricted to medium exertional level, but because of breathing problems, she is precluded from work that exposes her to dust, fumes, smoke, chemicals, noxious gases, that because she has had the upper part of her index finger amputated, she has some degree of difficulty with fine manipulation, and that she has a reduced range of motion in her neck as [described by Plaintiff at the hearing]." TR 40-41. The vocational expert responded

that, although the hypothetical individual would not be able to return to work such as that previously performed by Plaintiff, such an individual would be able to work as a machine cleaner, a linen room attendant, and a janitor, all of which had significant numbers of available positions in the local and national economies. TR 41. The second hypothetical was identical to the first, with the exception of the individual being restricted to a light (versus medium) exertional level. TR 40-41. The vocational expert responded that, at the light exertional level, the hypothetical claimant could work as a parking lot attendant, a laundry folder, and an office helper, all of which had significant numbers of available positions in the local and national economies. TR 41-42. The third hypothetical, which the ALJ associated with Nurse Reed's assessment, provided that "because of fatigue, or pain, or the frequent use of the bathroom . . . or any combination of those reasons, the individual is unable to complete an eight hour day on a regular basis . . . ." TR 42. The vocational expert responded that such an individual "would be unemployable." *Id.*

As noted above, the fact that Plaintiff is unable to perform her past work is not in dispute, and the vocational expert's testimony regarding that matter is of no consequence. Plaintiff is correct in her assertion that the vocational expert testified that Plaintiff would be unable to work based upon Nurse Reed's assessment reporting that Plaintiff's impairments prevent her from completing an eight hour workday. Docket No. 14, TR 473-76. As discussed above, however, the ALJ's determination not to accord any weight to Nurse Reed's assessment was proper. As such, the vocational expert's testimony regarding the third hypothetical is immaterial because the ALJ rejected the restrictions upon which the third hypothetical was predicated.

Because the ALJ concluded that Plaintiff retained the residual functional capacity for

medium work with some restrictions, the ALJ properly adopted the testimony of the vocational expert regarding the first hypothetical, finding that Plaintiff was able to perform other work in the national and local economies despite her impairments. TR 14, 16-17, 40-41. Furthermore, because the ALJ determined that Plaintiff was able to perform work at a medium exertional level, Rules 201.09 and 201.10 of Table 1 of the Grid are inapplicable to the instant case as they pertain to sedentary work. TR 14. Plaintiff's argument fails.

**4. Plaintiff's Bowel Disorder**

Plaintiff contends that the ALJ "did not adequately address her bowel problem which requires frequent bathroom breaks." Docket No. 14. Plaintiff relies upon the Physical Residual Functional Capacity Assessment of Dr. Joe G. Allison, which reports that the Plaintiff "[r]equires ready bathroom access." *Id.*, TR 317.

Defendant responds that the ALJ properly considered and evaluated Plaintiff's bowel disorder when making the residual functional capacity determination. Docket No. 15. Defendant asserts that the ALJ "did not recognize significant incontinence-related work limitations because sparse medical evidence did not indicate work-inhibiting severity; Plaintiff's statements were not credible, and Plaintiff failed to provide evidence demonstrating that the condition had gotten worse." *Id.*

Despite Plaintiff's contention that the ALJ did not adequately address her bowel problem and resultant need for frequent bathroom breaks, the ALJ, in her third finding, determined Plaintiff's bowel disorder to be a severe impairment. TR 12. The ALJ acknowledged that Plaintiff had experienced "some difficulty with bowel movements" ever since her surgery for squamous cell carcinoma of the anus in 1998, but noted that a 2007 colonoscopy was normal, a

whole body bone scan showed no evidence of bony metastases, and a 2009 CT of the abdomen and pelvis for abdominal pain was also normal.  TR 12, 29-30, 33-34.

The ALJ recounted Plaintiff's allegations regarding her bowel disorder, noting:

> At the hearing, the claimant testified that she last worked in January of 2007 at a sewing factory.   However, she stated that she only worked there for 4 days because she could not perform the job due to her back problems and bowel problems.  The last job that she worked for a significant period of time was at Systex manufacturing.  She worked there about 3 years until February of 2006.  She explained that she was terminated from this job because she became ill and could not go to work.  The claimant reported that she cannot work now because she has trouble with her bowels due to her cancer; she has back pain; she is unable to sit and/or stand for very long; and she has frequent headaches.  The claimant reported that she has had bowel problems for about 10 years but that the problems have become worse.  She stated that she has frequent accidents and that she had accidents at work as well.  The claimant reported that she must wear undergarments for her bowel problems and that she averages about 6 bowel movements per day. . . .

TR 14.

As can be seen, the ALJ considered Plaintiff's allegations regarding her bowel impairment.  The ALJ ultimately determined, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged.  TR 14.  Moreover, the ALJ, after considering Plaintiff's testimony and the evidence of record, did not find that Plaintiff's bowel disorder would prevent her from working under specified conditions.  As has been noted, such a determination is within the ALJ's province.

The record reflects that the ALJ was aware of Plaintiff's bowel impairment and found it to be severe, and that the ALJ considered Plaintiff's subjective complaints regarding that impairment but found those subjective complaints not fully credible.  Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge